## FREDERICO MONTALVO V. THE STATE.

No. 14498.   Delivered December 23, 1931.
Appeal Reinstated February 17, 1932.
State's Rehearing Granted October 5, 1932.
Appellant's Rehearing Denied January 25, 1933.
Reported in 56 S. W. (2d) 184.

The opinion states the case.

*Bismark Pope* and *Phillip A. Kazen,* both of Laredo, for appellant.

*Lloyd W Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is theft of cattle; the punishment, confinement in the penitentiary for three years.

We find in the record a purported judgment which begins by setting out the verdict of the jury as follows: "We the jury in the above styled and numbered cause find the defendant, Federico Montalvo, guilty as charged in the indictment and assess his penalty at three years confinement in the state penitentiary. Don H. Marsh, Foreman."

Following the verdict is the order of the court adjudging appellant to be guilty of theft of cattle as found by the jury. It is not shown that appellant entered any plea. It is not shown that a jury was impaneled. Whether evidence was submitted is not disclosed. If the court charged the jury, or received the verdict, the judgment fails to show it. There was an utter failure to comply with article 766, C. C. P., relating to the requisite of a judgment. Hellman v. State, 87 Texas Crim. Rep., 460, 222 S. W., 980.

No sentence appears in the record. A sentence is necessary to confer jurisdiction on the Court of Criminal Appeals. Butler v. State (Texas Crim. App.), 8 S. W. (2d) 183; Doyle v. State, 104 Texas Crim. Rep., 582, 286 S. W., 214.

The appeal is dismissed. Appellant is granted fifteen days from this date in which to perfect the record.

*Dismissed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON THE MERITS ON REINSTATEMENT OF APPEAL.

CHRISTIAN, JUDGE.—The record having been perfected, the appeal is reinstated and the case considered on its merits.

Appellant lived with his father, Eustacio Montalvo, on a ranch, which adjoined a ranch belonging to Mr. Jones. The fences between the two ranches were in bad condition and Mr. Jones' cattle ranged in the pastures belonging to appellant's father. The Jones' cattle were in the custody, management, and control of one Walter F. Long, who had permission to enter the pastures of appellant's father at any time for the purpose of looking for his stock. In riding through the Montalvo pastures, Mr. Long had seen some calves tied to trees. Believing that these calves belonged to Mr. Jones, he turned a cow in the pasture for the purpose of finding out whether one of the calves belonged to her. He later made a further search of the pasture. He found the body of the cow in a thicket, it appearing that she had been recently kiled. Near the place where the cow had been killed he found a calf tied to a tree. Officers having been notified went to the place where the cow was found and waited with Mr. Long for the purpose of detecting the offender. After remaining at the place for more than twenty-four hours, they saw appellant and another boy approaching in a wagon. Appellant and his companion drove to a point near the officers and loaded the calf in the wagon. Upon the officers making their presence known, appellant said to them: "You are just in time, we are gathering our cattle, we are marking and branding our cattle." One of the officers replied: "Yes, looks like you are handling somebody else's cattle—Mr. Jones' cattle." Upon being questioned by the officers, appellant stated that his companion had roped the cow and that he had knocked her in the head with a hatchet. He said: "When we were dragging these calves she was bawling too loud—making too much noise." One of the officers then said to appellant: "I guess you thought somebody might hear you from the road." To this appellant replied: "That is the reason I killed her, to get her out of the way." Going to the home of appellant's father, the officers found four or five calves in the lot. These calves were turned

into Mr. Jones' pasture. The calf which appellant and his companion had loaded into the wagon belonged to the dead cow. The foregoing facts were elicited from state's witnesses by the district attorney. Appellant offered no testimony.

The indictment charged appellant with theft of one head of cattle belonging to Mr. Long. The state's attorney before this court concedes that the evidence is insufficient to show that appellant stole the cattle found in the lot at the home of his father. The only testimony touching the identification of the animals last mentioned was that they were taken from the lot and placed in Mr. Jones' pasture. No witness testified that they belonged to Mr. Jones. Appellant objected to the charge of the court for its failure to embrace an instruction to the effect that before he could be convicted the jury must believe beyond a reasonable doubt that he fraudulently took either the cow which was found dead, or the calf that appellant and his companion loaded into the wagon. This charge should have been given. Under the facts disclosed by the record the jury might have concluded that while appellant's explanation as to his connection with the cow and calf found in the pasture was true and showed that he was not guilty of the theft of said animals, yet nevertheless he was guilty of theft of the animals found in his father's lot.

Appellant's statement concerning the dead cow tended to show that he did not steal said animal. He said he killed her for the purpose of keeping her from interfering with him when he was rounding up the calves. As to the calf found in the vicinity of the cow, appellant stated to the officers when they made their presence known that he was rounding up his cattle. Hence it is seen that as to both animals appellant made an explanation as to his possession which tended to exculpate him. The charge of the court did no more than to define theft and advise the jury to convict appellant if they believed beyond a reasonable doubt that he stole one head of cattle, as charged in the indictment. No affirmative defenses were covered in the charge. The defensive issues raised by appellant's explanation should have been affirmatively submitted in the charge. See Hunt v. State, 89 Texas Crim. Rep., 89, 229 S. W., 869. Appellant objected to the charge for the failure to submit such issues.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON STATE'S MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Both appellant and the state have filed motions for rehearing, and the case has been considered again as carefully as we are able, and we will restate the facts and the various propositions advanced.

The pasture of appellant's father and that of Jones, joined, and cattle seem to have gotten from one to the other. Mr. Long had charge of the Jones' cattle and pasture, and was the alleged owner of the cattle charged to have been stolen. On July 30, 1930, Long was in Montalvo's pasture and found three calves tied to a tree, which he recognized as belonging to Jones. Hearing a cow bawling along the Jones' fence, he turned her into Montalvo's pasture and she went straight to the calves, and when he presently left, one of the tied calves, a brindled bull calf, was sucking this cow which belonged to Jones and bore his brand. Mr. Long went to town, got two officers and the party returned about an hour later to where the cow and calves were left, but found that during this time the calves had been moved and the cow killed. Her body was still warm. Her calf was tied in a thicket not far from the cow's body. The party remained near the place until about noon of the next day, when a wagon appeared in which were appellant and Juan Garza. When appellant and Garza got near where the calf was tied and could see it was still there, they went to the body of the cow. One of them said, "Yes, there she is," and they then circled back to where the calf was tied, and, without setting out details, acting together they both got the calf into the wagon and tied it down. While so engaged the officers and Long walked up to a few feet of said parties. Appellant saw them, stood up, took a deep breath, and said in Spanish to Garza "They have caught us." Garza asked who, and appellant replied "The officers." The sheriff said to appellant "Frederico, I am surprised." Appellant said "You are just in time, we are gathering our cattle, we are marking and branding our cattle." The sheriff said "Yes, looks like you are handling somebody else's cattle,—Mr. Jones' cattle." The sheriff then walked with appellant over to the body of the dead cow and asked appellant who killed her. Appellant at first said that Garza did, but changed his statement and said "I will tell you the truth, I killed her and Juan roped her and put her in this thicket for me." The sheriff asked him if he knew whose cow she was, and appellant said "Yes, she belonged to Mr. Jones." The sheriff asked what her brand was and appellant stooped and wrote on the ground "VI," which was Mr. Jones' brand. The sheriff testified that appel-

lant first said he shot the cow, but when asked what with, he then said he knocked her in the head with a hatchet. He was then asked why he killed the cow and stated that when they were DRAGGING THE CALVES she was bawling too loud, making too much noise, and he killed her to get her out of the way. The officers took appellant and Garza to the Montalvo ranch house where they found five head of calves in a pen, two of the calves being those which Long had seen tied with the brindled bull calf at the place where the cow was killed and to which appellant and Garza came at the time of their arrest. These calves were turned into Jones' pasture, and some of them were later seen in said pasture sucking their mothers, which were Jones' cows. Mr. Taylor, the sheriff, and his deputy, Mr. Barfield, and Mr. Long all testified and were the only witnesses before the jury. Appellant introduced no testimony.

There are six bills of exception. The first complains of the refusal to change the venue. Nine state witnesses swore that a fair trial could be had by appellant in the county of the prosecution. Appellant's father and another were the only defense witnesses heard on this question. Appellant's father said he doubted if a fair trial could be had. The other witness thought it could. The bill shows no error.

Refusal to continue the case was made the subject of another bill of exception, but the record shows that on hearing of the motion for new trial the state introduced testimony to the effect that the only witness named in the application for continuance had appeared before the grand jury which investigated this case and testified directly contrary to the averments in the application. This bill shows no error.

Bill of exception No. 3 complains of the reception of testimony of what was said by appellant to the sheriff when found in possession of one of the stolen animals and near the body of the cow that was killed. Clearly this was res gestae of the offense and admissible.

The next complaint sets out a half page of the testimony of the sheriff, in substance, that when they got to Montalvo's ranch house they found some calves in a pen which they took and turned into Mr. Jones' pasture, and that witness subsequently saw one of these calves sucking a cow belonging to Jones. The objection to said testimony was as follows: "To all of which testimony appellant objected because the stealing of said cattle, if stolen, was a separate transaction with which defendant's connection was not shown, and this was prejudicial to appellant." It is impossible to read this record and

not be convinced that appellant and Garza participated in the simultaneous taking of three head of cattle belonging to Jones, two of which were among those found by the officers at the ranch house after appellant's arrest; also, that on the day following the taking of these three head appellant and Garza took and killed another head of cattle belonging to Jones. The objection in the bill was to the testimony as a whole. The testimany relating to the two calves other than the brindled bull calf, and the finding of same in the pen at the Montalvo ranch house, as well as the testimony relating to the killing of the cow, was a necessary part of the development of the state's case, regardless of which one of the animals might have been deemed the one head referred to in the indictment. No error appears in this bill. The same is true of the complaint in bills of exception Nos. 5 and 6 presenting objections to the testimony of Mr. Barfield and Mr. Long upon the same points.

Appellant presented a number of special charges, only one of which we deem necessary to discuss at all. Appellant's special charge No. 4 is as follows: "Gentlemen of the Jury: If you believe from the evidence that an explanation made by the defendant as to his possession of one head of cattle alleged to have been stolen was consistent with his innocence and that such explanation was reasonable and probably true and accounted for his possession in a manner consistent with his innocence, such explanation should be considered as true, or if you have a reasonable doubt as to such matters such explanation should be considered as true and you must acquit the defendant, unless the State, by competent evidence, has proven the falsity of such explanation, and unless you believe that the State has, by competent evidence, proven the falsity of such explanation, or if you have a reasonable doubt as to whether or not the State has proven the falsity of such explanation, you must consider such explanation as true and acquit the defendant." Manifestly such charge was inapplicable to the facts, was confusing, and an incorrect statement of the law. It is impossible to tell to what statement of appellant reference is had in the charge referred to. His first statement when he saw the officers, which was heard and testified to by them, was: "The officers have caught us." It is also true that two of the stolen calves had been moved from where they were tied, evidently by appellant and Garza, not more than an hour before the officers and Long came back to where the dead body of the cow was lying. It is also true that near the body of this cow was her calf. Was appellant talking about the calf in the wagon or its dead

mother near by, or the two calves already taken by him and Garza to their pen, or the other three calves of Jones which were already in the pen? He made no application of his statement, nor do we see how the jury would be authorized to do so. No one asked him to explain about the dead cow, or the calf in the wagon, or the other five calves in the pen. The sheriff merely said, "I am surprised." Appellant admitted in the same statement then made that he killed the Jones cow to keep her from interfering while they removed her calf. He made no claim to the calf in the wagon either then or at any other time, nor to any of the other animals referred to. The case was not one on circumstantial evidence in which the state was relying only on the circumstance of possession of recently stolen property. In fact, Mr. Long, the alleged owner of the stolen animals, saw appellant engaged in the appropriation of the calf that was in the wagon. It might also be said that in no case should a jury be told, as appears in the special charge referred to, that if "they have a reasonable doubt *whether or not* the State has proven the falsity of such explanation," they must acquit. Of necessity the jury would have a reasonable doubt as to whether the state had or had not, but the accused can not in any case claim the advantage resulting from such doubt, no matter which way the doubt lies.

The state's motion for rehearing is granted, the judgment of reversal is set aside, and the judgment of the trial court is affirmed.

*Affirmed.*

ON APPELLANT'S MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—In the original opinion, the declarations of the appellant at the time of his discovery, namely: "You are just in time, we are gathering our cattle; we are marking and branding our cattle. * * * When we were dragging these calves she was bawling too loud—making too much noise. * * * That is the reason I killed her, to get her out of the way," were made at the time the appellant appeared at the place where the officers previously found the cow that had been killed and the calves that were tied to a tree. In the original opinion, the remarks of the appellant were treated as somewhat exculpatory and it was upon that assumption that the reversal took place. Taken as a whole, the remarks are not deemed exculpatory but amount to nothing less than an admission of the theft of the cow. In Hall's case, 41 Texas, 287, it was said:

"We think that, under our statute, where the circumstances

534

show the intent to steal, the offense of theft may be complete with the killing. * * * The hogs were killed in the woods, out of the immediate custody of the owner. By the act of killing, under such circumstances, the defendant may fairly be held to have had the hogs under his control and in his possession."

In Gold's case, 81 Texas Crim. Rep., 611, the facts are in substance as follows: John Roberts missed his milch cow. A few days later the carcass of the cow was found in a pasture under the control of the appellant's father. The cow had been shot. Appellant said to a witness that the cow belonged to him, that she was going to die, and that he killed her. The carcass was found in the brush. Appellant admitted that he had skinned the animal and sold the hide but denied the killing. In passing upon the case this court held that the facts were such as justified the appellant's conviction for the theft of the animal. See Coombes v. State, 17 Texas App., 258; Stegall v. State, 32 Texas Crim. Rep., 100.

Under the facts in the present case, we think the additional instructions to the jury were not required.

The application for a change of venue and the evidence thereunder have been re-examined. We entertain the opinion that the evidence heard is not such as would justify this court in holding that in refusing to change the venue the trial judge abused his discretion. The case of McNeely v. State, 104 Texas Crim. Rep., 263, and many others, we think support the view mentioned.

The motion for rehearing is overruled.

*Overruled.*